IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CRISTAL LEE CASLER,

        Plaintiff,

    v.

DEPARTMENT OF THE INTERIOR, et al.,

        Defendants.

Case No. 18-cv-02187-MMC

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Re: Dkt. No. 41

Before the Court is the Motion for Summary Judgment, filed February 8, 2019, by defendants Department of the Interior and David Bernhardt, Acting Secretary of the Department of the Interior. Plaintiff Cristal Lee Casler has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

### BACKGROUND[2]

From June 19, 2011, to September 30, 2013, plaintiff was employed as a term employee for the Golden Gate National Recreation Area (GGNRA) (see Daw Decl., Exs. 1-3; see also Cochary Decl. ¶¶ 8-9),[3] in which position she served as the daytime law enforcement ranger (LE Ranger) on Alcatraz Island ("Alcatraz") (see Marin Decl. ¶ 12). During the period of plaintiff's employment, Matt Eng ("Eng") was "assigned to the

---

[1] By order filed March 12, 2019, the Court approved the parties' stipulation to deem the matter submitted following the filing of their respective supplemental briefs.

[2] The following facts are undisputed.

[3] The GGNRA is "a largely urban national park with diverse properties in San Mateo County, San Francisco County, and Marin County." (See Marin Decl. ¶ 3.)

evening shift on Alcatraz" (see Eng Decl. ¶ 1) and was the only other LE Ranger who worked on Alcatraz (see Marin Decl. ¶ 12).  From February 2013 through July 2013, Michael Yost ("Yost") was plaintiff's and Eng's direct supervisor.  (See Yost Decl. ¶¶ 3-4.)

The instant action is premised on events that transpired during the period in which Yost was plaintiff's supervisor, which events culminated in the non-renewal of plaintiff's employment in September 2013.  Specifically, citing numerous occasions on which she alleges she was treated less favorably compared to her "similarly situated male colleagues" (see Compl. ¶ 99) and subjected to a hostile work environment, plaintiff asserts defendants unlawfully discriminated against her on the basis of her gender, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e.

By the instant motion, defendants seek an order granting summary judgment in their favor on each of plaintiff's claims.

## LEGAL STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).

The Supreme Court's 1986 "trilogy" of Celotex Corp. v. Catrett, 477 U.S. 317 (1986), Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986), requires that a party seeking summary judgment show the absence of a genuine issue of material fact.  "[A] moving party without the ultimate burden of persuasion at trial . . . may carry its initial burden of production [on summary judgment] by either of two methods."  Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1066, 1099 (9th Cir. 2000).  Specifically, "[t]he moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial."  See id.

1    Once the moving party has carried its burden, the nonmoving party must "go

2    beyond the pleadings and by [its] own affidavits, or by the depositions, answers to

3    interrogatories, and admissions on file, designate specific facts showing that there is a

4    genuine issue for trial." See Celotex, 477 U.S. at 324 (internal quotation and citation

5    omitted). "When the moving party has carried its burden under Rule 56[ ], its opponent

6    must do more than simply show that there is some metaphysical doubt as to the material

7    facts." Matsushita, 475 U.S. at 586. "If the [opposing party's] evidence is merely

8    colorable, or is not significantly probative, summary judgment may be granted." Liberty

9    Lobby, 477 U.S. at 249-50 (citations omitted). "[I]nferences to be drawn from the

10   underlying facts," however, "must be viewed in the light most favorable to the party

11   opposing the motion." See Matsushita, 475 U.S. at 587 (internal quotation and citation

12   omitted).

**DISCUSSION**

14   As noted, plaintiff asserts defendants are liable for unlawful discrimination under

15   Title VII because, due to her gender, defendants subjected her to disparate treatment

16   and created a hostile work environment.

17   **I.    Disparate Treatment**

18   Pursuant to Title VII, an employer may not "discriminate against any individual with

19   respect to his compensation, terms, conditions, or privileges of employment, because of

20   such individual's . . . sex." See 42 U.S.C. § 2000e-2(a). Courts, in evaluating a Title VII

21   claim premised on a theory of disparate treatment, apply the three-step "burden-shifting

22   analysis" set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See

23   Davis v. Team Elec. Co., 520 F.3d 1080, 1088-89 (9th Cir. 2008).

24   At the first step of the analysis, "[t]he employee must . . . establish a prima facie

25   case of discrimination" by showing: "(1) she belongs to a protected class; (2) she was

26   qualified for her position; (3) she was subject[ed] to an adverse employment action; and

27   (4) similarly situated individuals outside her protected class were treated more favorably."

28   See id. at 1089. If the employee satisfies her burden, "[t]he burden of production, but not

3

persuasion, then shifts to the employer to articulate some legitimate, non-discriminatory reason for the challenged action." See Chuang v. Univ. of Cal. Davis Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000). Upon the employer's satisfaction of such burden, the employee "must show that the articulated reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's explanation is unworthy of credence." See id. at 1224 (internal quotation and citation omitted).

Plaintiff's disparate treatment claim is predicated on numerous incidents that occurred in 2013, each of which is discussed in turn below.

### A.    Change in Work Schedule

According to plaintiff, from June 2011 to February 2013, she "work[ed] four (4) ten (10) hour days per week . . . with only occasional and temporary changes." (See Compl. ¶ 79.) Plaintiff alleges that, on February 22, 2013, Yost "informed [plaintiff] that her schedule would be changed," in that she would be required to work "five (5) eight (8) hour days" year-round (see id. ¶¶ 34, 37), and that, a month later, she "received notice by electronic mail that her schedule had been officially changed" (see id. ¶ 42). Plaintiff alleges she was subjected to unlawful discrimination because "none of [her] similarly situated male colleagues were forced to change their schedules." (See id. ¶ 80.)

In support of their motion, defendants have submitted undisputed evidence showing there were no male LE Rangers who were similarly situated to plaintiff with respect to their work schedules. In particular, the evidence shows plaintiff was the sole term LE Ranger employed with the GGNRA who worked on a schedule of four ten-hour days per week. (See Yost Decl. ¶ 7 (stating "Eng . . . worked a five-day work week, as did all other term LE Rangers at GGNRA other than [plaintiff]").) In opposition, plaintiff has submitted no evidence to the contrary; she has not submitted, for example, evidence identifying any male term LE Ranger who, unlike plaintiff, was allowed to remain on a schedule of working four ten-hour days per week. Plaintiff thus has failed to establish a prima facie case of discrimination based on her schedule change.

Moreover, even assuming plaintiff had established a prima facie case, defendants have submitted undisputed evidence showing plaintiff's work schedule was changed for "operational reasons" (<u>see</u> Cochary Decl. ¶ 12), specifically, "to maximize law enforcement presence on Alcatraz using existing resources," thereby addressing, within "budgetary constraints," concerns expressed by Alcatraz employees and the GGNRA Superintendent "about visitor and employee safety," which had arisen due to "the notoriety of Alcatraz and its remote location." (<u>See</u> <u>id.</u> ¶ 5; <u>see also</u> Lavasseur Decl. ¶ 6 Yost Decl. ¶¶ 6-7.)  Having submitted such evidence, defendants have carried their burden of showing plaintiff's schedule was changed for a legitimate, non-discriminatory reason, and plaintiff, however, has not shown such reason is pretextual.[4]

For all of the above reasons, to the extent plaintiff's disparate treatment claim is predicated on her schedule change, plaintiff has failed to raise a triable issue, and, accordingly, defendants are entitled to summary judgment thereon.

## B.      Failing to Respect the Chain of Command

Plaintiff alleges that, after she expressed her concerns regarding her schedule change to supervisory employees who were not in her direct chain of command, Yost, on three occasions between February and March of 2013, "instructed [plaintiff] to follow the chain of command in addressing concerns." (<u>See</u> Compl. ¶ 76.)  According to plaintiff, on one such occasion, Yost "threatened [plaintiff] that 'her contract did not have to be renewed' and further threatened to place a formal letter of reprimand in her file for going outside the chain of command." (<u>See</u> <u>id.</u> ¶ 82.)  Plaintiff alleges she was "treated significantly less favorably than her male colleagues" and, consequently, was subjected

---

[4] As an exhibit filed with her opposition, plaintiff has submitted the entire transcript of a 179-page deposition given by Yost in connection with proceedings before the Equal Employment Opportunity Commission. (<u>See</u> Opp., Ex. 1.)  In her opposition, however, plaintiff neither references nor cites to such exhibit, let alone identifies with particularity the provisions therein on which she may be relying.  Under such circumstances, plaintiff's submission is of no avail.  <u>See</u> <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001) (holding "district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found").

to unlawful discrimination because her "similarly situated male colleagues were neither disciplined nor even addressed for going outside the chain of command." (See id. ¶ 78.) As set forth below, plaintiff has not made out a prima facie case of discrimination premised on Yost's remarks.

First, despite defendants' "assum[ption] for purposes of this motion" that Yost's comments "constitute[] . . . adverse employment action[s]" (see Mot. at 13:26-27), the unchallenged evidence establishes such comments do not in fact constitute adverse employment actions.

As defined by the Ninth Circuit, "an adverse employment action" is one that "materially affects the compensation, terms, conditions, or privileges of employment." See Davis, 520 F.3d at 1089 (internal alterations, quotation, and citation omitted).

Here, plaintiff testified at her deposition that Yost did not place in her file a written reprimand for going outside the chain of command. (See Daw Decl., Ex. 4 (Pl. Dep.) at 141:10-19.) She also testified that, while her term of employment ultimately was not renewed, "the basis for not renewing [her] contract" (see id. at 159:18) was her failure to "show up for a shift" (see id. at 159:15-16) rather than her raising concerns with supervisory figures outside her chain of command. The record thus shows Yost's remarks did not "materially affect[] the compensation, terms, conditions, or privileges of [plaintiff's] employment." See Davis, 520 F.3d at 1089 (alteration omitted); see also Dilliard v. City & Cty. of San Francisco, 2014 WL 491837, at *5 (N.D. Cal. Feb. 5, 2014) (holding supervisor's criticism of employee's performance and threat to suspend employee for purported abandonment of post "[did] not amount to adverse employment actions" because employee "was not written up or punished after . . . the incidents").

Moreover, defendants have submitted undisputed evidence showing there were no similarly situated male LE Rangers who were treated more favorably than plaintiff. Specifically, Yost declares he "did not have to speak to any . . . ranger, other than [plaintiff], about following and respecting the chain of command" (see Yost Decl. ¶ 27); additionally, Eng declares "there were no occasions when [he] went outside the chain of

command for any reason, including to raise issues regarding [his] schedule or other working conditions" (see Eng Decl. ¶ 7). In opposition, plaintiff has submitted no evidence to the contrary; she has not, for example, submitted evidence showing there were any male LE Rangers who went outside the chain of command but were not criticized or admonished by Yost or any other supervisor. Thus, even assuming, arguendo, the reprimand constituted an adverse employment action, plaintiff has failed to raise a triable issue as to discrimination based thereon.

Accordingly, to the extent plaintiff's disparate treatment claim is premised on Yost's verbal remarks concerning her failure to respect the chain of command, defendants are entitled to summary judgment.

### C. Absence Without Leave

Plaintiff alleges that, on two occasions, she was improperly disciplined for being absent without leave and thereby subjected to disparate treatment due to her gender.

As to the first occasion, plaintiff alleges that, on April 23, 2013, she "called the Dispatch Office to let them know she would not be in for her assigned shift" the next day (see Compl. ¶ 88), but Yost, on May 9, 2013, nevertheless "issued [plaintiff] a Letter of Reprimand for failing to call him directly in connection with her absence on April 24, 2013." (See id. ¶ 89.) As to the second occasion, plaintiff alleges that, on July 14, 2013, Yost placed "three (3) hours of Absent Without Leave . . . on her time sheet" because she had left her assigned shift early without securing prior approval to do so from Yost or another supervisor. (See id. ¶ 96.) Plaintiff alleges that, because two male LE Rangers under Yost's supervision, specifically, Eng and Ryan Wright ("Wright"), were not disciplined despite having been absent from work without obtaining his approval (see Compl. ¶ 90), she was subjected to unlawful discrimination.

In support of their motion, defendants have submitted undisputed evidence showing that neither plaintiff and Eng nor plaintiff and Wright were similarly situated. Specifically, with respect to Eng, the evidence shows that, unlike plaintiff, Eng "was never absent without leave" (see Eng Decl. ¶ 8), that Eng "never left [his] assignment . . . during

a shift without prior approval by a supervisor" (see id. ¶ 9), and that "[i]f [Eng] needed to take leave, [he] contacted [his] supervisor by text or phone and received approval before doing so" (see id. ¶ 8).[5] With respect to Wright, the evidence shows that, unlike plaintiff, Wright did not miss or depart early from his regularly assigned shift; rather, he missed an "overtime shift" (see Wright Decl. ¶ 7) related to "a special event at Alcatraz" (see id. ¶ 3). The evidence further shows that, in contrast to plaintiff, Wright "had no idea [the shift] had been assigned to [him]" (see id. ¶ 7), as he was not working on the date that the email assigning him to such shift was sent (see id. ¶¶ 5-6) and, consequently, "did not receive the . . . email until he reported to work" the day after he missed the shift (see id. ¶ 7).

In opposition, plaintiff has submitted no evidence to the contrary; she has not submitted, for example, evidence showing there were any male LE Rangers who were not disciplined after having missed, or departed early from, an assigned shift without obtaining their supervisor's prior approval. Indeed, at her deposition, plaintiff testified that, other than Wright, she was "[not] aware of any law enforcement rangers failing to show up for a work shift" (see Daw Decl., Ex. 4 at 158:10-13), nor did she "know of anybody else other than [Wright or Eng] who was treated more favorably than [she] with respect to . . . absence without leave" (see id. at 160:10-13).

Plaintiff thus has failed to raise a triable issue as to discrimination based on either the Letter of Reprimand in May 2013 or her being marked absent without leave on her timecard in July 2013 and, accordingly, to the extent plaintiff's disparate treatment claim is predicated thereon, defendants are entitled to summary judgment.

---

[5] In support of her supplemental opposition, plaintiff submitted what purports to be an unsworn statement by Eng, describing one occasion on which LE Ranger Kurt Veek ("Veek") told him to "call in to dispatch directly" when he wanted to take "sick leave or emergency annual leave." (See Pl. Supp. Opp., Ex. 2.) As defendants correctly point out, however, the exhibit has not been authenticated and, consequently, is inadmissible. See Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002) (holding "unauthenticated documents cannot be considered in a motion for summary judgment"). Moreover, the conversation described therein is not inconsistent with Eng's declaration and, in any event, plaintiff's claim is based on criticism of her conduct by Yost, not by Veek.

### D. Questioned for Being Off-Island

Plaintiff alleges that, on May 7, 2013, she "was assigned to work off-island by the supervisor on-duty, Mr. Veek" and, when Yost "learned that [plaintiff] was not on [Alcatraz], he called her to inquire" about her whereabouts and "stat[ed] he would need to confirm her story." (See Compl. ¶ 94.) According to plaintiff, because "none of her male colleagues were subjected to questioning when they were following supervisor orders" (see id.), she was subject to disparate treatment based on her gender.

Although defendants "assume for purposes of this motion" that Yost's remark "constitutes an adverse employment action" (see Mot. at 13:26-27), the Court finds Yost's conduct does not in fact constitute such an action. In particular, although plaintiff testified at her deposition that she was "upset" with the "tone in [Yost's] voice" (see Daw Decl., Ex. 4 at 164:20-22) and felt as though he was "questioning [her] integrity" (see id. at 165:14) when he told her he "would have to confirm [she was] actually allowed to be off-island" (see id. at 165:3-4), such remark did not "materially affect[] the compensation, terms, conditions, or privileges of [plaintiff's] employment." See Davis, 520 F.3d at 1089 (alteration omitted); see also Nguyen v. McHugh, 65 F. Supp. 3d 873, 893 (N.D. Cal. 2014) (finding, while employee "may have felt embarrassed" when supervisor gave her "verbal warnings" regarding propriety of her conduct, "a bruised ego" does not "rise[] to the level of an adverse employment action"); Blount v. Morgan Stanley Smith Barney LLC, 982 F. Supp. 2d 1077, 1082 (N.D. Cal. 2013) (noting "definition of adverse employment action does not extend . . . to rude or offensive comments").

Accordingly, to the extent plaintiff's disparate treatment claim is predicated on Yost's informing plaintiff he would need to verify her whereabouts when she was off-island on May 7, 2013, defendants are entitled to summary judgment.

### E. Mid-Year Performance Evaluation

Plaintiff alleges she was subjected to disparate treatment because, "[d]espite the [GGNRA] requiring that each employee receive a mid-year performance evaluation, [plaintiff] was never provided with a mid-year performance evaluation in 2013." (See

1  Compl. ¶ 95.)

2      In support of their motion, defendants have submitted undisputed evidence

3  showing plaintiff's inability to make out a prima facie case as to this claim.  In particular,

4  plaintiff, at her deposition, acknowledged Eng did not receive a mid-year evaluation in

5  2013 (see Daw Decl., Ex. 4 at 167:12-14) and that she "[does] not know if any of the

6  other employees under Yost's supervision" received a mid-year evaluation in 2013 (see

7  id. at 166:20-23).   Moreover, Yost declares he "[does] not recall providing formal written

8  mid-year evaluations for any of the LE Rangers under [his] supervision in 2013" (see Yost

9  Decl. ¶ 23), and plaintiff has submitted no evidence suggesting he did provide such

10  evaluations.

11      Plaintiff thus has failed to either make out a prima facie case or raise a triable

12  issue as to discrimination based on the lack of a performance evaluation, and,

13  accordingly, to the extent plaintiff's disparate treatment claim is predicated thereon,

14  defendants are entitled to summary judgment.

15      **F.    Pre-Approval for Overtime**

16      Plaintiff testified at her deposition that she was subjected to disparate treatment

17  when, in July 2013, she received an email from Veek informing her that she "need[ed] to

18  get extra signed approval from her supervisor" before she could "work [an overtime]

19  shift." (See Daw Decl., Ex. 4 at 183:10-11.)[6]

20      In support of their motion, defendants have submitted undisputed evidence

21  showing plaintiff was required to obtain permission to work overtime because "there[]

22  [had] been problems on [her] timecard with . . . the [overtime] hours matching up" (see

23  Daw Decl., Ex. 4 at 182:17-18), thereby satisfying their burden to show a legitimate, non-

24  discriminatory reason for such requirement.  Plaintiff, however, has not submitted any

25  evidence showing defendants' proffered reason is pretextual and, consequently, has

26  

27  _____

[6] Although the Complaint makes no reference to the July 2013 email, defendants
28  acknowledge plaintiff is bringing a disparate treatment claim premised thereon.  (See
Daw Decl., Ex. 4 at 182:15-184:8; see also Mot. at 19:5-14.)

failed to raise a triable issue as to discrimination based thereon.

Accordingly, to the extent plaintiff's disparate treatment claim is predicated on her being required to obtain approval prior to working an overtime shift, defendants are entitled to summary judgment.

### G. Opportunities to Work Off-Island

Plaintiff alleges she was subjected to disparate treatment because "[t]hroughout her employment with [GGNRA], she was provided . . . the opportunity to participate in off-island operations," but "[o]nce [she] was placed under . . . Yost's supervision, these opportunities stopped immediately and completely, within (1) week, for her, yet remained available to her similarly situated male colleagues." (See Compl. ¶ 93.)

At the outset, the Court notes that, because Eng is the only other LE Ranger who worked on Alcatraz in 2013 (see Marin Decl. ¶ 12), he is the sole employee who can serve as plaintiff's comparator to the extent her disparate treatment claim is premised on denial of opportunities to work off-island shifts. In that regard, plaintiff testified at her deposition that she "kind of [has] a memory in [her] mind talking to [Eng] a couple of times about what he had going on at night" (see Daw Decl., Ex. 4 at 194:23-24) and that "in between the end of February to September 30th, [she] believe[s] that he did work, at least, a few shifts at night on the mainland" (see id. at 194:16-18).

In support of their motion, defendants have submitted undisputed evidence as to a legitimate, non-discriminatory reason for denying plaintiff opportunities to work off-island shifts in 2013. In particular, defendants have submitted a declaration by Xavier Agnew ("Agnew"), plaintiff's supervisor immediately prior to Yost, in which he states "[w]hen [he] began supervising the Alcatraz rangers, there was not as much pressure to have a ranger on Alcatraz," which "gave [him] flexibility to assign [plaintiff] to some shifts off-island," but that "management pressure to have the rangers remain on-island increased going into 2013" both because of budgetary concerns and "pressure from management to increase security on Alcatraz[,] result[ing] in . . . fewer opportunities for plaintiff to work

off-island." (See Agnew Decl. ¶ 4.)[7] Consistent therewith, Eng, in his declaration, states he and plaintiff were previously "provide[d] with experience working shifts off Alcatraz," but that, in 2012, while he and plaintiff were supervised by Agnew, such "off-island shifts decreased in frequency" and, "[l]ater," although he "[does] not recall the precise timing," the "practice . . . stopped entirely." (See Eng Decl. ¶ 3.)

In her opposition, plaintiff "questions" defendants' proffered reason, because, according to plaintiff, "her male colleagues were still permitted to work off-island." (See Opp. at 11:11-13.) As set forth below, however, the record reflects plaintiff's lack of sufficient evidence to show defendants' proffered reason is pretextual.

As noted, defendants' undisputed evidence shows GGNRA's policy regarding off-island shifts became more stringent over time, to the point such shifts became completely unavailable. (See Eng Decl. ¶ 3; see also Agnew Decl. ¶ 4.) As plaintiff's deposition testimony shows, however, plaintiff lacks sufficient evidence as to when, and thus under which policy, she and Eng made their respective requests to work off-island. In particular, plaintiff testified she "believe[s]" Eng worked "at least a few shifts at night on the mainland" in the period "between the end of February to September 30th [2013]" (see Daw Decl., Ex. 4 at 194:17-19) and that she "can't remember the days when" her requests were denied (see id. at 192:16-22). Plaintiff thus lacks sufficient evidence to show defendants' reason for denying her requests is "unworthy of credence," see Chuang, 225 F.3d at 1124, i.e., sufficient evidence to show she and Eng were treated differently at a time when the same policy governing off-island shifts was in effect.

Accordingly, to the extent plaintiffs' disparate treatment claim is predicated on denial of opportunities to work off-island shifts, defendants are entitled to summary judgment.

**H.    Requests for Training**

Plaintiff alleges she was subjected to disparate treatment because, "from April 5,

---

[7] As explained by Agnew, "[t]here were concerns expressed by [National Park Service ("NPS")] employees about the possibility of an active shooter on-island." (See id.)

2013 to September 30, 2013, she was not permitted to go to any of the approximately thirty (30) training courses offered in that time frame," whereas "her male counterpart on Alcatraz Island was permitted to attend several training exercises" during the same period.  (See Compl. ¶ 67.)

In support of their motion, defendants have submitted evidence showing plaintiff lacks evidence to prove Yost, in fact, did not permit her to attend training courses in 2013.  In particular, at her deposition, when asked whether she "[made] any specific request to attend training that was denied by . . . Yost" (see Daw Decl., Ex. 4 at 191:17-20), plaintiff answered:  "I can't recall," and, indeed, did recall a specific request that he "approved" (see id. at 192:4-15).  By submitting such evidence, defendants have shown plaintiff lacks sufficient evidence to establish a prima facie case, and, in opposition, plaintiff has neither submitted evidence to the contrary nor has she otherwise offered evidence to raise a triable issue as to whether she made any request for training that was denied.

Accordingly, to the extent plaintiff's disparate treatment claim is predicated on the denial of her requests for training, defendants are entitled to summary judgment.

## I.      Requests for Equipment

Plaintiff alleges that, "[i]n the spring of 2013, [she] requested a new Spring Kit" (see Compl. ¶ 92) for her "Agency-approved duty weapon" (see id. ¶ 69), as well as "other law enforcement gear that she needed to perform her duties" (see id. ¶ 92).  At her deposition, plaintiff clarified that, in addition to requesting a new Spring Kit, she also requested a new holster for her baton.  (See Daw Decl., Ex. 4 at 213:11.)  According to plaintiff, she was subjected to disparate treatment because, "[w]hile [her] male colleagues were given quick and easy access to the equipment they requested, . . . Yost refused to ensure that [plaintiff] was able to obtain the same, necessary equipment."  (See id. ¶ 92.)

In support of their motion, defendants have submitted evidence showing plaintiff was not provided her requested equipment for legitimate, non-discriminatory reasons.  Specifically, as to her request for a Spring Kit, the evidence shows plaintiff used a

"personally owned firearm" as her duty weapon (see Daw Decl., Ex. 4 at 208:4-5) and, although LE Rangers are permitted to "use a personal weapon as their duty weapon, instead of using a weapon issued by NPS or by the Federal Law Enforcement Training Center[,] . . . NPS is not permitted to provide replacement parts for them" (see Marin Decl. ¶ 18). As to her request for a baton holster, the evidence submitted by defendants shows plaintiff did not return a baton to GGNRA on separation from her employment (see Marin Decl ¶ 21; see id., Ex. 1 (Receipt for Property)), which "suggests . . . [plaintiff] used her own baton" (see Marin Decl. ¶ 21), a "personally owned" item for which GGNRA does "not authorize the purchase of a holster" (see id). In opposition, plaintiff has submitted no evidence to the contrary, nor has she submitted evidence showing defendants' proffered reasons for refusing to fulfill her requests for the above-referenced equipment are pretextual.

Accordingly, to the extent plaintiff's disparate treatment claim is premised on equipment requests, plaintiff has failed to raise a triable issue, and, consequently, defendants are entitled to summary judgment thereon.

### J. Non-Renewal of Term

Plaintiff alleges that, on August 1, 2013, she was "informed . . . that her contract would not be renewed for the coming year." (See Compl. ¶ 62.) According to plaintiff, she was subjected to disparate treatment because "[e]ach of [her] similarly situated male colleagues had their contracts renewed." (See id.¶ 99.)

In support of their motion, defendants have submitted undisputed evidence showing plaintiff's term of employment was not renewed due to her having been absent without leave for a second time in 2013. (See Yost Decl. ¶¶ 31-33 (stating Yost and Lavasseur agreed that "allowing [plaintiff's] appointment to expire without renewal" was appropriate disciplinary action in response to plaintiff's "second absence without leave"); see also Lavasseur Decl. ¶ 15 (stating: "I recommended to Chief Cochary that we allow [plaintiff's] appointment to expire . . . for the second absence without leave"); Cochary Decl. ¶ 10 (stating: "I concurred with Deputy Chief Lavasseur that allowing [plaintiff's]

term appointment to expire without renewal was the best option following her second absence without leave").)  By submitting such evidence, defendants have satisfied their burden of showing plaintiff's term was not renewed for a legitimate, non-discriminatory reason.  In opposition, plaintiff has submitted no evidence showing defendants' proffered reason is pretextual.

Accordingly, to the extent plaintiff's disparate treatment claim is predicated on non-renewal of her employment, plaintiff has failed to raise a triable issue, and, consequently, defendants are entitled to summary judgment thereon.

## II.     Hostile Work Environment

"To prevail on a hostile workplace claim premised on . . . sex, a plaintiff must show:  (1) that [she] was subject[ed] to verbal or physical conduct of a . . . sexual nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive to alter the condition of the plaintiff's employment and create an abusive work environment."  Vasquez v. Cty. of Los Angeles, 349 F.3d 634, 642 (9th Cir. 2003).

Here, plaintiff's hostile work environment claim is premised on the same allegations as those underlying her disparate treatment claim.  Specifically, plaintiff contends such allegations demonstrate she "was subjected to a pattern of threats, discipline, ridicule, and lack of support which interfered with her ability to perform her job and created an intimidating environment."  (See Opp. at 16:24-26.)  As discussed above, however, all of the incidents on which plaintiff relies concern the manner in which, or means by which, she performed her job and, absent evidence showing defendants acted with a discriminatory motive, are thus insufficient to support her hostile work environment claim.  See Chamat v. Geithner, 381 Fed. App'x 728, 730 (9th Cir. 2010) (affirming summary judgment in favor of employer where hostile work environment claim was based on "negative comments related to [employee's] job performance rather than to his race, national origin or age"); see also Spillane v. Shulkin, 692 Fed. App'x 843, 844 (9th Cir. 2017) (holding "district court properly granted summary judgment on [employee's] hostile work environment claim" where claim was premised on "incidents involv[ing] [employee's]

poor work performance" and there was no evidence showing "alleged harassment was racially motivated"); cf. Mitchel v. Holder, 2010 WL 816761, at *8-11 (N.D. Cal. Mar. 9, 2010) (finding plaintiff "set forth sufficient evidence to survive summary judgment on her hostile work environment claim" where plaintiff "put forth evidence demonstrating [her supervisor] frequently made sexual comments regarding female employees, including comments about [p]laintiff's and other female employees' body parts, which, in at least one instance, he accompanied with hand gestures and grunting sounds").

Accordingly, as to her hostile work environment claim, plaintiff has failed to raise a triable issue, and, consequently, defendants are entitled to summary judgment thereon.

### CONCLUSION

For the reasons discussed above, defendants' Motion for Summary Judgment is hereby GRANTED.

**IT IS SO ORDERED.**

Dated:  April 25, 2019

MAXINE M. CHESNEY
United States District Judge